**Kevin Lee SCHAAL, Plaintiff,**

v.

**Charles J. ROWE et al., Defendants.**

**No. 78–1212.**

United States District Court, S. D. Illinois, N. D.

Nov. 17, 1978.

---

Kevin Lee Schaal, pro se.

James A. Devine, Asst. Atty. Gen., Springfield, Ill., Joseph Moscov, Sp. Asst. Atty. Gen., Deputy Chief Legal Counsel, Illinois Dept. of Corrections, Chicago, Ill. (assisted by Susan Takata, Chicago, Ill.), for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

Plaintiff was an inmate at the Pontiac Correctional Center, Pontiac, Illinois, when he filed this *pro se* action under 42 U.S.C. § 1983. The case originally was filed in the Northern District of Illinois, but was transferred to this court pursuant to Senior Judge Hoffman's order of September 15, 1978, granting defendant Rowe's motion for change of venue. Both defendants have filed motions for summary judgment, plaintiff has responded, and the matter is now ready for disposition.

Plaintiff alleged that the defendants refused to grant him a transfer from Pontiac to the Vandalia Correctional Center, a lesser security institution, despite his repeated letters in August and September of 1977 to defendant Rowe and Governor Thompson alleging threats to his personal safety from members of "gangs" among the inmates at Pontiac. Defendant Rowe acknowledged the letters and referred them to defendant Pinkney, the warden at Pontiac. Several exhibits attached to defendant's memorandum in support of the motion for summary judgment show that officials at the institution were aware of plaintiff's allegations of threats, but that they did not "feel that he [was] an appropriate candidate for Protective Custody," and that he was ineligible for transfer because he was scheduled to appear before the parole board in October.

On September 17, 1977, plaintiff was discovered having anal intercourse with another inmate, and was demoted to "C" grade and had one year of statutory good time revoked. Plaintiff alleges that he was actually the victim of an assault which defendants should have prevented, rather than a willing participant in the act. He seeks money damages, a mandatory injunc-

tion restoring his lost good time and transferring him to a safer environment, and a prohibitory injunction against any retaliation by defendants.

■ Because it appears that plaintiff has been paroled, his prayer for injunctive relief is moot. Although he technically remains in the custody of defendant Rowe, as Director of the Department of Corrections, restoration of the good time credits revoked would serve no purpose, as it would only affect his eligibility for parole, which is now an accomplished fact. Ill.Rev.Stat. ch. 38, § 1003–6–3.

■ Plaintiff's claim for damages resulting from the attack of September 17, however, is not moot. It is well settled that prisoners are entitled to protection from the assaults of other prisoners. *Little v. Walker*, 552 F.2d 193, 197 (7th Cir. 1977); *Holt v. Sarver*, 442 F.2d 304 (8th Cir. 1971); *Penn v. Oliver*, 351 F.Supp. 1292 (E.D.Va.1972). In order to state an eighth amendment claim resulting from an attack, however, a prisoner must show that prison officials "deliberately deprived" him of his constitutional rights. Deliberate deprivation may result from actual intent to deprive him of rights or from recklessness in ignoring known threats. *Little v. Walker*, 552 F.2d 193, 197 & n. 8 (7th Cir. 1977). Both standards are rigorous and in this case neither is met.

Even reading plaintiff's complaint liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), he does not allege that defendants intentionally disregarded his requests for a transfer, and the exhibits show that they did not, in fact, ignore them, but found plaintiff ineligible for a transfer. Reading plaintiff's requests for a transfer as a general request for protection from other prisoners, the evidence also shows investigation of the claims by prison authorities and an evaluation that a cellhouse transfer was an appropriate means of protection.

The exhibits attached to defendants' memoranda in support of their motions for summary judgment cannot fairly be charac-terized as evidencing reckless conduct. Both before and after plaintiff says he was attacked, prison officials investigated his allegations, and went so far as to transfer him to a cellhouse away from the prisoners he alleged were threatening him. At most, defendants' actions were negligent, and negligence will not support a claim of eighth amendment violations. *Little v. Walker, supra.*

Another observation supports the conclusion that defendants were not reckless. Following the alleged assault, plaintiff followed institutional grievance procedures to seek restoration of his lost privileges, in the course of which he took two polygraph examinations that indicated overwhelmingly that he was not the victim of an assault, but a willing participant. While polygraph tests cannot be required of a party in either a civil or criminal case under Illinois law, Ill.Rev.Stat. ch. 38, § 155–11, ch. 110, § 54.1, they are of some probative value, especially in showing whether plaintiff actually was assaulted. If no assault took place, prison officials could not recklessly or intentionally have failed to protect plaintiff's rights.

The facts of this case are similar to those presented in *Penn v. Oliver, supra,* and the reasoning of the court there seems dispositive:

"In determining whether a given act or omission by prison authorities rises to the level of deprivation of the right to security, the Court takes notice of the violent nature of the men who inhabit * * * prisons. It would be fantasy to believe that even the most enlightened prison officials operating with unlimited resources could prevent all acts of violence within the prison. Moreover, even if a prison official fails through his negligence to prevent an act of violence, a violation of constitutional right is not of necessity stated. To the contrary, there must be a showing * * * of an egregious failure to provide security to a particular inmate, before a deprivation of constitutional right is stated. An isolated act or omission by a prison official that allows an attack to occur and which in-

volves only simple negligence does not, absent special circumstances, create a constitutional deprivation over which this Court has jurisdiction. Without an independent basis of jurisdiction, the Court cannot hear such a claim." 351 F.Supp. at 1294.

 Although plaintiff may have stated a claim of simple negligence against defendants, his allegations do not rise to the level of constitutional violation.

Accordingly, defendants' motions for summary judgment are GRANTED and judgment shall enter for defendants.