46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James E. WILLIAMS, Plaintiff-Appellant,
v.
A. G. BIERMAN, James Greer and M. Busch, Defendants-Appellees.
 No. 93-1212.
 United States Court of Appeals, Seventh Circuit.
 Submitted: Dec. 20, 1994.*
Decided: Jan. 18, 1995.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 As a prisoner at Menard Correctional Center, an Illinois state prison, James Williams filed a complaint against various prison officials alleging violations of his Fifth, Eighth, Ninth and Fourteenth Amendments. Specifically, he charged that prison officials violated his constitutional rights by (1) making him wear coveralls that were damaging to his health for approximately three weeks after they misplaced his clothes; (2) denying him outside exercise for two weeks; (3) denying him medical treatment for dizziness, nausea, a rash, burning, itching, swelling, and pain caused by inadequate ventilation in his cell and the coveralls, and for pre-existing ailments; (4) removing and not replacing his cleaning materials; and (5) intentionally placing him in a "control segregation cell"[1] for approximately six weeks without due process and for the purpose of subjecting him to an environment of extreme heat and inadequate ventilation. Williams asserts that the aforementioned conduct was done in retaliation for a state court action that he filed against prison officials. Williams sought actual and punitive damages and injunctive and declaratory relief.
 
 
 2
 Prior to the filing of the defendants' answer, Williams filed a demand for a jury trial that the district court denied as untimely. The district court referred the case to a magistrate judge and at the magistrate judge's recommendation, the district court appointed counsel for Williams. Subsequently, the magistrate judge submitted a report recommending that the district court grant the defendants' motion for summary judgment on all issues except the inadequacy of the ventilation. The magistrate judge's report recommended denial of the defendants' motion for summary judgment on the ventilation issue because the defendants had not addressed this claim. Williams did not file any objections to the report, and the district court, accordingly, not needing to conduct a de novo review, see 28 U.S.C. Sec. 636(b), adopted the magistrate's report. The defendants then filed a supplemental motion for summary judgment on the issue of the adequacy of the ventilation. The magistrate judge recommended that the defendants' supplemental motion for summary judgment be granted and the district court adopted this recommendation. Williams appeals from both orders, as well as from the denial of his jury demand as untimely and from what he describes as denial of his motion for reappointment of counsel.[2]
 
 
 3
 After reviewing the record de novo, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), we AFFIRM for the reasons stated in the district court's orders of May 23rd, 1991 and December 16, 1992. The issue of the denial of Williams' demand for a jury trial is moot.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE SOUTHERN DISTRICT OF ILLINOIS
 
 4
 James Earl Williams, Plaintiff,
 
 
 5
 -vs-
 
 
 6
 A.G. Bierman, James Greer, and M. Busch, Defendants.
 
 No. 88 3546 WLB
 ORDER
 
 7
 This matter is before the court on the Report and Recommendation (Doc. 109) filed by Magistrate Judge Gerald Cohn recommending that Defendants' Supplemental Motion for Summary Judgment (Doc. 95) be granted. The Plaintiff has filed a timely Objection thereto (Doc. 110).
 
 
 8
 The remaining issue in this suit is whether Cell 847 in the segregation unit at Menard Correctional Center was adequately ventilated during the period from July 13, 1988 to August 25, 1988. The Plaintiff was placed in Cell 847 during this time period and alleges that he became ill when the lack of adequate ventilation caused the temperature in his cell to become unbearably high.
 
 
 9
 A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wainwright Bank and Trust Co. v. Railroad Mens' Federal Savings and Loan, 806 F.2d 146, 149 (7th Cir. 1986). To preclude summary judgment, the non-moving party must show the disputed fact to be outcome determinative under the applicable law. Id. However, the mere existence of a disputed fact is not, in and of itself, enough to withstand a motion for summary judgment. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he test for summary judgment is whether sufficient evidence exists in the pre-trial record to allow the non-moving party to survive a motion for directed verdict." Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476 (7th Cir.), cert. denied, 488 U.S. 852 (1988).
 
 
 10
 In support of their Supplemental Motion for Summary Judgment, the Defendants have submitted the affidavit of Arlen Cierfer, the Chief Engineer at Menard Correctional Center, which states that "each and every closed front cell located in the Menard Correctional Center has the same ventilation system." Also submitted are tests results from ventilation tests conducted on the solid front cells in the North Cell House where the segregation unit is located. The first test results show that in 1983 the air flow measured 83 cubic feet per minute (CFM). The second test shows that in 1987 the air flow measured 50 CFM or more. The third test, conducted on June 28, 1989, shows that a ventilation analysis of Cell 854 measured an air flow of 52 CFM. The Defendants have also submitted a copy of the American Correctional Association Standards for Adult Correctional Institutions which requires cells to have circulation of at least 10 CFM.
 
 
 11
 The Plaintiff counters the Defendants' evidence in support of their Supplemental Motion for Summary Judgment with two affidavits. The Plaintiff's first affidavit states that there was an exhaust fan near Cell 854 at the time the 1989 test was conducted which has no effect on Cell 847. The Plaintiff's second affidavit states that from July 13, 1988 to August 25, 1988 two exhaust fans were positioned 30-35 yards from Cell 847 in either direction.
 
 Rule 56(e) provides in part:
 
 12
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 
 13
 Fed. R. Civ. P. 56(e).
 
 
 14
 The Defendants' evidence shows that in 1983 and 1986 ventilation in the segregation unit was adequate and that all cells in the segregation have the same ventilation system. The Plaintiff challenges these tests in his brief by stating that the tests are irrelevant because they were taken prior to 1988. Besides being in the wrong format to successfully challenge a Motion for Summary Judgment, the Plaintiff's brief does not state why these earlier tests are irrelevant. There are no allegations that the ventilation system had been changed in the relevant time period or that some other event occurred making the tests irrelevant. For this reason, the Defendants' Supplemental Motion for Summary Judgment will be granted.
 
 
 15
 Accordingly, the Magistrate Judge's Report and Recommendation (Doc. 109) is adopted, and the Defendants' Supplemental Motion for Summary Judgment (Doc. 95) is granted.
 
 
 16
 IT IS SO ORDERED.
 
 
 17
 DATED: This 16 day of Dec, 1992.
 
 ORDER
 
 18
 WILLIAM L. BEATTY, UNITED STATES District Judge.
 
 
 19
 The magistrate has submitted a Report and Recommendation (Doc. No. 77 ) to which no timely objections have been filed, therefore the court need not conduct a de novo review; 28 U.S.C. Sec.636(b); based upon the magistrate's reasoning, the court adopts the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435; Video Views Inc., v. Studio 21, Ltd., and Joseph Sclafani, 797 F.2d 538 (7th Cir. 1986).
 
 
 20
 For the reasons set forth in the Magistrate's Report and Recommendation, defendant James Greer's motion for summary judgment is granted as to all claims against him and defendants Bierman and Busch's motion for summary judgment is granted as to all claims against them except the claim relating to being placed in a cell with inadequate ventilation during the summer.
 
 
 21
 IT IS SO ORDERED.
 
 
 22
 DATED: This 23rd day of May, 1991.
 
 REPORT AND RECOMMENDATION
 
 23
 COHN, United States Magistrate Judge.
 
 
 24
 This Report and Recommendation is respectfully submitted to Judge William L. Beatty pursuant to 28 U.S.C. Sec. 636(b)(1)(B).
 
 
 25
 Plaintiff, an inmate at the Menard Correctional Center, filed a civil rights Complaint pursuant to 42 U.S.C. Sec. 1983 on August 16, 1988.
 
 
 26
 Before the Court is defendants' Motion for Summary Judgment, filed with supporting memorandum, affidavits and exhibits on September 18, 1990, pursuant to Fed. R. Civ. P. 56(b). A hearing was held on this motion on January 25, 1991.
 
 
 27
 The task before this Court is necessarily a limited one when ruling on a motion for summary judgment. It has been firmly established by the Seventh Circuit that a grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wainwright Bank and Trust Co. v. Railroadmen's Federal Savings and Loan, 806 F.2d 146, 149 (7th Cir. 1986). Furthermore, to preclude summary judgment, the non-moving party must show the disputed fact to be outcome determinative under the applicable law. Id. at 149. The burden is upon the moving party to show, on the basis of the pleadings and supporting documents, that there is no genuine issue of material fact in dispute. Rose v. Bridgeport Brass Co., 487 F.2d 804, 808 (7th Cir. 1973).
 
 
 28
 Plaintiff has filed this action alleging that his constitutional rights as guaranteed by the Fifth, Eighth, Ninth and Fourteenth Amendments have been violated by the defendants. Specifically, plaintiff alleges that defendant Busch intentionally misplaced his clothing, while he (the plaintiff) was away from the institution on a writ. Plaintiff further alleges that defendant Busch gave him a "suit of coveralls that ... were in some way damaging to my physical being ... with the intent to cause bodily harm...." Plaintiff also alleges that he was intentionally placed in a "control front segregation cell" without due process and for the purpose of subjecting him to an environment of extreme heat and inadequate ventilation. Plaintiff's Complaint also asserts that during the period of time he was held in the "control segregation cell," that he was denied outside "yard" exercise. Finally, plaintiff alleges that he was denied medical care during the period of time in question.
 
 
 29
 The right of due process arises only when a protected interest is at stake. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). It is well established that inmates have no liberty interest in remaining in a prison's general population. Meachum v. Fano, 427 U.S. 215, 224-25, reh'g denied, 429 U.S. 873 (1976). The Seventh Circuit Court of Appeals in Cain v. Lane, 857 F.2d 1139 (7th Cir. 1988), found that "Illinois statutes and regulations do not create a liberty interest in remaining in general population, ..." furthermore, the institution is not required to provide an inmate with due process protection prior to placement in segregation. Cain v. Lane, 857 F.2d at 1143-44. (Emphasis added). Furthermore, given a valid conviction, the prison inmate has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the constitution. Meachum v. Fano, 427 U.S. 215, 224 reh'g denied, 429 U.S. 873 (1976). Segregation is the sort of confinement that inmates should anticipate receiving at some point in their incarceration and does not involve an interest independently protected by the due process clause. Hewitt v. Helms, 459 U.S. 460 (1983). Finally, there is no constitutional difference between segregation and general population. Chapman v. Pickett, 801 F.2d 912, 921 (7th Cir. 1986) (Easterbrook, J., dissenting), citing Caldwell v. Miller, 790 F.2d 589, 600-05 (7th Cir. 1986).
 
 
 30
 In the instant case, the plaintiff has alleged that his constitutional rights were violated when defendants Busch and Bierman placed him in a "control segregation cell" without due process. As plaintiff's placement is discretionary within the Department of Corrections, such placement cannot violate his constitutional rights. Furthermore, plaintiff's conclusory allegations that a cell with a solid front door amounts to "control segregation" are without merit. This Court need not accept conclusory allegations completely lacking evidentiary support. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). It must be remembered that even "pro se pleadings have been required to meet some minimum standard of particularity." Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1207 (7th Cir. 1980) (footnote omitted). That a cell has a solid front door cannot violate the plaintiff's rights. Control segregation involves more limits upon an inmate than just a solid front door; limits which the plaintiff has not alleged. Therefore, it will be the recommendation of this Court that summary judgment be granted on this claim.
 
 
 31
 The standard for determining what is cruel and unusual punishment was enunciated in Gregg v. Georgia, 428 U.S. 153 (1976). In that case the Court held that the Eighth Amendment protection against cruel and unusual punishment requires that there be neither "unnecessary and wanton infliction of pain," nor punishment "grossly out of proportion to the severity of the crime." Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Wanton infliction of pain or intentional or knowing conduct requires a level of culpability greater than mere negligence." Risner v. Duckworth, 562 F.Supp. 378, 381 (1983). "Thus, deliberate indifference to the deprivation of an inmate's rights is actionable where it can be shown that the prison authorities manifested an actual intent to deprive him of his rights...." Burr v. Duckworth, 547 F.Supp. 192, 196 (1982).
 
 
 32
 The Supreme Court has on numerous occasions held that an inmate's treatment by prison authorities is rarely subject to judicial oversight under the Due Process Clause. Vitek v. Jones, 445 U.S. 480 (1980). This result is necessitated by the fact that prison officials have broad administrative and discretionary authority over the institutions they manage and that prisoners retain only a narrow range of protected liberty interests. Hewitt v. Helms, 459 U.S. 460 (1983). The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned or are totally without penological justification. Rhodes v. Chapman, 452 U.S. 337 (1981); Caldwell v. Miller, 790 F2d. 589, 600 (7th Cir. 1986). Conditions of confinement being part of the penalty fall within the ambit of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312 (1986). The Supreme Court has provided no static test for determining whether the particular conditions of confinement constitute cruel and unusual punishment. Instead it has directed that the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. Rhodes v. Chapman, 452 U.S. 337, 346 (1981); (quoting Trop v. Dulles, 356 U.S. 86 (1958)). In determining whether there has been an Eighth Amendment violation the Court must focus on the totality of the conditions of confinement. Madyun v. Thompson, 657 F.2d 868 (7th Cir. 1981). The Supreme Court has cautioned, however, that conditions are not unconstitutional simply because they are harsh and restrictive. Such conditions are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).
 
 
 33
 Under the Eighth Amendment, various courts have found that the denial of exercise and showers can rise to the level of a constitutional violation. See, e.g., Lightfoot v. Walker, 486 F.Supp. 504 (S.D. Ill. 1980); Davenport v. DeRobertis, 653 F.Supp. 649 (N.D. Ill. 1987). However, in Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988), the Court found that the denial of yard exercise, but not all exercise, for short term periods of time does not violate the constitution. The Harris court also found that the short term placement in a filthy cell would not violate the constitution.
 
 
 34
 In the instant case, the plaintiff has alleged that he was denied yard exercise and cleaning materials for a two week period of time. As noted in Harris, this is not sufficient to raise a constitutional violation. Furthermore, as the Harris court pointed out, if the plaintiff was desperate to exercise, he could have improvised within his cell. In addition, as stated by the plaintiff, the cell he was placed in was clean. Therefore, any denial of cleaning material for a two week period of time could not, without more, violate the constitution. Accordingly, it will be the recommendation of this Court that all claims relating to the lack of exercise and denial of cleaning material be denied.
 
 
 35
 Among plaintiff's many allegations is the claim that he was placed, midsummer, in a cell with inadequate ventilation. In Ramos v. Lamm, 639 F.2d 559 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981), the Court stated that "a state must provide ... reasonably adequate ventilation, sanitation, bedding, hygienic materials and utilities." Id. at 568. The Court, after lengthy review of the file, cannot find where the defendants have addressed this claim. Material issues of fact are therefore remain concerning the lack of ventilation in the plaintiff's cell. In addition, given that the plaintiff apparently broke out in a "heat rash," it appears that such placement may have been detrimental to the plaintiff. It will be the recommendation of this Court that summary judgment be denied on this issue.
 
 
 36
 Plaintiff has alleged that he was denied medical treatment for his rash. The standard for determining whether or not a denial of medical treatment, or the denial thereof, constitutes an Eighth Amendment violation is set forth in Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), which states that in order to establish an Eighth Amendment violation prison officials must have been deliberately indifferent to a prisoner's serious medical needs. The deliberate indifference standard encompasses only "wanton infliction of unnecessary pain" and not accident or inadvertent failure.
 
 
 37
 Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.
 
 
 38
 Estelle v. Gamble, at 106. Furthermore, courts will not find a constitutional violation when there is a disagreement between a prisoner and a physician as to the treatment indicated. Ferranti v. Moran, 618 F.2d 888 (1st Cir. 1980); Williams v. Duckworth, 598 F.Supp. 9 (N.D. Ill. 1983), aff'd 749 F.2d 34 (7th Cir. 1985).
 
 
 39
 In the instant case, plaintiff complains that the treatment he received for his heat rash was inadequate. Plaintiff states that he was provided with two different creams with which to treat the condition, both of which failed to remedy the condition. It is also clear that the plaintiff was seen by medical personnel at the institution. Given the fact that the plaintiff was treated by medical staff, he cannot allege that the defendants were deliberately indifferent to his medical needs. Furthermore, in raising his allegations concerning the denial of medical treatment, plaintiff has failed to allege any involvement of the named defendants in any act which violated his rights. It is axiomatic that a plaintiff must allege the direct personal involvement of each defendant in a violation of his constitutional rights. Walker v. Rowe, 791 F.2d 507 (7th Cir. 1986). Accordingly, the Court will recommend judgment in the defendants' favor on this claim.
 
 
 40
 Plaintiff also alleges that his rights were violated when defendant Busch misplaced his clothing after he returned from a writ. It is without doubt that prisons may place reasonable restrictions on the quantity and type of property that an inmate may possess without violating due process. Bell v. Wolfish, 441 U.S. 520 (1979). The Seventh Circuit has further stated:
 
 
 41
 There is no constitutional right that prohibits prison officials from confiscating most of a prisoner's personal property pending release from prison. The constitutional violation arises only if they confiscate the property without due process of law.
 
 
 42
 Secret v. Brierton, 584 F.2d 823, 830 (7th Cir. 1978). In Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court held that negligent deprivations of a prisoner's property by state officials was not cognizable in federal court as a due process claim if the state provides a meaningful post-deprivation remedy. Plaintiff has a viable remedy in the Illinois Court of Claims for any property taken and subsequently lost or destroyed prior to the plaintiff's release from prison. Ill. Rev. Stat., ch. 37, para. 439.8(d) (1987).
 
 
 43
 As noted, plaintiff has an adequate remedy for the return of his missing property. According to the plaintiff's deposition, the plaintiff's missing property consists of one t-shirt and one set of state clothing. The lost state clothing is the concern of the state and cannot give rise to any cause of action between the plaintiff and the defendants. The Court would also suggest that plaintiff's filing of a lawsuit over the alleged loss of one t-shirt is an abuse of the legal system and borders on maliciousness.
 
 
 44
 In Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983), the Court stressed that Sec. 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a Sec. 1983 action unless he caused or participated in an alleged constitutional deprivation. McBride v. Soos, 679 F.2d 1223 (7th Cir. 1982); Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal or an affirmative link between the misconduct complained of in the official suit is necessary. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). In short, individual liability is predicated upon personal responsibility. Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir. 1984). To establish personal involvement, the plaintiff must establish (1) that the defendant acted or failed to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or (2) the conduct which caused the constitutional deprivation occurred either at the defendant's direction or with his knowledge and consent. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982); Wellman v. Faulkner, 715 F.2d 269, 275 (7th Cir. 1983); cert. denied, 468 U.S. 1217 (1983). Finally, to establish a claim against a supervisory official, there must be a showing that the official knowingly, willingly or at least recklessly cause the alleged deprivation by his action or failure to act. Smith v. Rose, 761 F.2d 360 (7th Cir. 1985); Rascon v. Hardiman, 803 F.2d 269 (7th Cir. 1986).
 
 
 45
 Plaintiff, in his Complaint, has not attributed any improper acts to defendant James Greer. It is readily apparent from the pleadings that James Greer has been named a defendant only because of his position as warden of the Menard Correctional Center. Liability, under Sec. 1983, cannot be imputed merely based upon an individual's supervisory position. Accordingly, the Court will recommend that all claims against James Greer be dismissed.
 
 
 46
 Finally, the plaintiff has alleged that the defendants were motivated by retaliation for these alleged constitutional violations. The Supreme Court has recognized that inmates have a right to be free from the arbitrary actions of prison officials. See Wolff v. McDonnell, 418 U.S. 539 (1974). The Seventh Circuit has further stated that, "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under Sec. 1983 even if the act, when taken for a different reason, would have been proper. Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir. 1984), citing, Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir. 1978), cert. denied, 440 U.S. 916 (1979). However, not every claim of retaliation by a disciplined prisoner will establish the actual existence of retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred. Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987). Merely alleging that an act was taken in retaliation is insufficient. See Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985).
 
 
 47
 The plaintiff has failed to set forth a chronology of events from which this Court could infer acts of retaliation. In fact, plaintiff, in his deposition, claims the only act of retaliation was being forced by defendant Bierman to wear handcuffs while in the administrative areas of the Menard Correctional Center pursuant to institutional policy. (plaintiff's deposition at 33-34). This is not sufficient to infer an act of retaliation.
 
 
 48
 Accordingly, for the above-stated reasons, it is the recommendation of this Court that the defendants' Motion for Summary Judgment be granted as to all claims against defendant James Greer. It is the Court's further recommendation that the defendants' Motion for Summary Judgment be granted for all remaining claims against defendants Bierman and Busch except for the claim relating to being placed in a cell with inadequate ventilation during the summer.
 
 
 49
 Dated this 28th day of January, 1991.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 As opposed to a "general segregation cell." (R. at 5.)
 
 
 [2]
 Williams, presumably displeased with counsel's representation, moved for an order disciplining his attorney on grounds of conflict of interest and non-performance. The magistrate judge denied this order; Williams appealed and this court transferred the matter back to the district court. (No. 90-2346). The district court affirmed the magistrate judge's ruling. Williams then moved that counsel be relieved of his duties and that another attorney be appointed for him. However, before the magistrate judge had ruled, Williams moved to "moot" his motion for reappointment of counsel. The court construed this as a motion to withdraw the earlier motion for new counsel and granted it. After the adoption by the district court of the magistrate judge's recommendation to grant summary judgment in favor of the defendants on all claims except the ventilation, Williams' counsel filed a motion to withdraw. The magistrate judge granted the motion. Because Williams did not thereafter move for appointment of another counsel and because Williams withdrew his motion to reappoint counsel, he cannot now claim that the district court abused its discretion in allowing counsel to withdraw and failing to appoint substitute counsel