**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**GEORGE M. PLEWS**
**BRIANNA J. SCHROEDER**
**JONATHAN PENN**
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**BRADLEY R. SUGARMAN**
**THOMAS F. O'GARA**
Taft Stettinius & Hollister, LLP
Indianapolis, Indiana

**DONN H. WRAY**
**NICHOLAS K. GAHL**
Katz & Korin, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| 5200 KEYSTONE LIMITED REALTY, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1306-CT-311 |
| | ) | |
| FILMCRAFT LABORATORIES, INC., ERIC J. SPICKLEMIRE, PORTRAIT AMERICA, INC., A.C. DEMAREE, INC., RUSS DELLEN, INC., CLEAN CAR, INC., and THE WAX MUSEUM & AUTO SALES, INC., | ) ) ) ) ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-0310-CT-3394

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Plaintiff, 5200 Keystone Limited Realty, LLC., (KLR), appeals the trial court's grant of summary judgment in favor of Filmcraft Laboratories, Inc. (Filmcraft)[1] and Eric J. Spicklemire (Spicklemire), *et al*., on KLR's property tax claim

We affirm.

ISSUE

KLR raises two issues on appeal, one of which we find dispositive and which we restate as follows:  Whether the trial court erred by concluding that KLR lacked standing to pursue its property tax claim.

FACTS AND PROCEDURAL HISTORY

Beginning in 1974, Spicklemire and his father leased a property at 5216 North Keystone Avenue in Indianapolis (the Site) where they operated their film developing business, Filmcraft.  On January 5, 1981, Spicklemire and his father acquired the Site and Spicklemire became the sole owner after his father passed away in 1994.  On May 26, 2000, Spicklemire obtained a loan from Apex Mortgage Corporation (Apex), secured by a mortgage on the Site.  In July 2001, Spicklemire ceased making loan payments, Filmcraft closed its operations and vacated the Site.  On September 27, 2001, Apex filed

---

[1] At the request of the respective parties, we recently dismissed with prejudice KLR's case against Filmcraft.  KLR's appeal with regard to all other Appellees remains pending and shall be analyzed in this opinion.

its complaint against Spicklemire, seeking foreclosure on the mortgage. The trial court issued a foreclosure decree in April 2002. Following a sheriff's sale on September 30, 2002, Apex obtained title, via sheriff's deed, to the Site. In 2003, Apex hired an agency to conduct environmental testing of the soil and groundwater at the Site and discovered that the Site contained environmental contaminants. Thereafter, on October 9, 2003, Apex filed another complaint against Filmcraft, requesting contribution from Filmcraft for future environmental cleanup costs.

On August 24, 2004, the Marion County Auditor gave Apex notice of delinquent taxes and special assessments that had become due and owing after September 30, 2002 but which had been assessed in 2001 and 2002 while Spicklemire had ownership of the Site. On October 7, 2004, the Site was sold at a tax sale. In December 2004, KLR, a limited liability company, acquired the Site from Apex via quitclaim deed. Thereafter, KLR was substituted as the plaintiff in the lawsuit against Filmcraft.

On January 14, 2005, Demetrios Emmanoelides (Emmanoelides), KLR's sole member, paid the unpaid back property taxes in the amount of $28,294.47 by personal check to the Marion County Treasurer to redeem the Site from the tax sale. In March 2005 and May 2005, KLR amended the original complaint to add various other defendants who previously owned the Site and also added a claim to recover the back property taxes for which Spicklemire was responsible. On May 24, 2005, KLR filed a motion for summary judgment on its complaint. After a five-year stay during which the parties unsuccessfully negotiated the claims, Filmcraft and Spicklemire filed their respective responses to KLR's motion and cross-moved for summary judgment. On May

31, 2011, the trial court granted KLR's motion for summary judgment against Spicklemire and against Filmcraft as to Filmcraft's obligation under a continuing guarantee for Spicklemire's liabilities. Filmcraft appealed; Spicklemire failed to timely perfect his appeal. On appeal, we determined Filmcraft was not liable under the continuing guarantee for Spicklemire's environmental liability but affirmed the trial court with respect to its liability for Spicklemire's property taxes. *See Filmcraft Laboratories, Inc. v. 5200 Keystone Ltd. Realty, LLC*, 969 N.E.2d 632 (Ind. Ct. App. 2012).

On January 15, 2013, KLR moved for summary judgment with respect to the specific amount of taxes it could recover from Spicklemire. Spicklemire responded, designated evidence in opposition to KLR's motion, and moved to vacate the May 31, 2011 Order. After a hearing, the trial court issued its Order on April 12, 2013, vacating its prior summary judgment ruling and entering summary judgment in favor of Spicklemire. The trial court concluded, in pertinent part

> The records of the Marion County Treasurer show that Emmanoelides paid $28,294.47 to redeem the Site from a tax sale on January 14, 2005. KLR testified that Emmanoelides paid this amount out of his personal funds and was identified as the "Remitter" on the check he used to make that payment. Moreover, after redeeming the Site the Auditor provided Emmanoelides with a Tax Sale Redemption Worksheet and a receipt entitled "Quietus." The Redemption Worksheet identified Apex as the taxpayer for the Site and Emmanoelides as the person who redeemed the Site. Additionally, the "Quietus" receipt certified that the funds had been paid to redeem the Site from the tax and had been "[d]eposited with the Marion County Treasurer for [the] account of: APEX MTG CORP." These facts clearly establish that Emmanoelides, not KLR, paid the back property taxes owed on the Site.
> KLR testified that Emmanoelides made this payment as a capital contribution to KLR. However, KLR has failed to designate any evidence such as a ledger or an operating agreement. In fact, KLR testified that it has not maintained any ledger or other record identifying any capital

4

contributions to the company. KLR also testified that it has not created any notes in favor of Emmanoelides demonstrative of KLR's obligation to repay the amounts he paid for property taxes at the Site out of his personal funds. KLR's self-serving testimony does not turn Emmanoelides' payment into a contribution to the company. Rather, Indiana business law requires contributions to be made to and maintained in the records of the company.

These facts clearly demonstrate that KLR lacks standing to pursue its property tax claim.

(Appellant's App. pp. 19-20) (internal references omitted).

On May 13, 2013, KLR filed its motion to correct error together with new evidence that had not been previously submitted to the trial court. On June 4, 2013, the trial court denied KLR's motion.

KLR now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Scope of Appeal*

Initially, we turn to Spicklemire's contention that although KLR timely appealed the trial court's summary judgment in favor of Spicklemire, it failed to appeal the trial court's subsequent denial of KLR's motion to correct error. Consequently, Spicklemire asserts that our appellate review is necessarily limited to the trial court's summary judgment and the evidence submitted in support of the parties' respective motions for summary judgment.

Indiana Appellate Rule 9(F) requires the appellant to include the date and time of the judgment or order appealed in his Notice of Appeal. Here, KLR's Notice of Appeal specified it was appealing the trial court's Order of April 12, 2013—Order Vacating the Court's May 31, 2011, Order Granting Partial Summary Judgment in Favor of Plaintiff

5

on its Property Tax Claim—and indicated that the subsequent motion to correct error had been denied on June 4, 2013. Attached to the Notice are copies of the trial court's April 12, 2013 summary judgment as well as the trial court's denial of KLR's motion to correct error. We conclude that KLR is appealing both Orders.

Next, we determine whether we may consider the new evidence KLR submitted with its motion to correct error. Indiana Trial Rule 59(A)(1) provides that a motion to correct error is a prerequisite for appeal when a party seeks to address "[n]ewly discovered material evidence . . . capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial." To prevail on a motion to correct error premised on newly discovered evidence, a party must demonstrate that the evidence could not have been discovered and produced at trial with reasonable diligence; that the evidence is material, relevant, and not merely cumulative or impeaching; that the evidence is not incompetent; that he exercised due diligence to discover the evidence in time for the final hearing; that the evidence is worthy of credit; and, that the evidence raises the strong presumption that a different result would have been reached upon retrial. *Matzat v. Matzat*, 854 N.E.2d 918, 920 (Ind. Ct. App. 2006).

In its summary judgment, the trial court based its conclusion that KLR lacked standing to pursue its claim on the absence of designated evidence documenting Emmanoelides' capital contributions to KLR. In response, KLR submitted, by way of a motion to correct error, the operating agreement of KLR and the minutes from the first meeting of KLR's member. Based on these newly discovered documents, KLR contends

6

that "[t]hese documents, verified by [Emmanoelides'] payment was a capital contribution to KLR." (Appellant's App. p. 226).

The only reference pointing to KLR's reasonable diligence in discovering these new materials, is a statement included in Emmanoelides' affidavit filed with its motion, affirming

> 5. Since I executed the [operating] [a]greement and held the first meeting of the LLC members in 2004, I have changed residences several times. I have looked for these documents in the past but was unable to locate them as they were misplaced during my moves.
>
> 6. After the [c]ourt issued its Order of April 12, 2013, I again looked for these documents. On or about May 1, 2013, I found the documents.

(Appellant's App. p. 263).

It is noteworthy that Spicklemire introduced his standing claim on February 22, 2013, in its response to KLR's motion for summary judgment. Despite being put on notice that this claim was raised, Emmanoelides did not appear to have looked for the documents. Only after the trial court issued its summary judgment finding in favor of Spicklemire on the standing issue, Emmanoelides was jolted into action and was able to locate the documents. However, as alluded to by Spicklemire, this newly discovered operating agreement and schedule of initial capital contribution contradict Emmanoelides' sworn testimony as KLR's member that the company never maintained a ledger of capital contributions.

We have long recognized that a litigant is obligated "to search for evidence in the place where, from the nature of the controversy, it would be most likely to be found." *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002). Despite being notified

7

that standing had become an issue, neither Emmanoelides nor KLR's counsel timely looked for documents dispelling the claim. Although he had searched for the papers in the undefined "past," Emmanoelides clearly was not concerned until after the trial court's summary judgment. (Appellant's App. p. 263). Such an attitude is at odds with the concept of "reasonable diligence." *See Matzat*, 854 N.E.2d at 920. Where parties neglect to follow-up, they do so at their own peril and may not later turn to the doctrine of newly discovered evidence for relief. *See Hartig*, 760 N.E.2d at 671-72. As a result, we are not now allowed to consider the newly discovered documents.

## II. *Standing*

KLR contends that the trial court erred in concluding that it lacked standing to pursue its claim against Spicklemire. Specifically, KLR maintains that Emmanoelides was appointed as KLR's sole member and acted on behalf of the company when he paid Spicklemire's property taxes.

### A. *Standard of Review*

Although the final order entered by the trial court was its denial of KLR's motion to correct error, that motion was based on the trial court's summary judgment; therefore, we review this appeal using the standard applicable to summary judgment reviews. *See, e.g., Pier 1 Imps., Inc. v. Acadia Merrillville Realty, L.P*., 991 N.E.2d 965, 968 (Ind. Ct. App. 2013). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of

8

the truth . . ., or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id*.

B. *Analysis*

In considering whether KLR has standing to bring its claim for payment of back property taxes, we note that the question of standing is generally one of law, not fact. *Vectren Energy Marketing & Serv., Inc. v. Executive Risk Specialty Ins., Co*., 875 N.E.2d 774, 777 (Ind. Ct. App. 2007). Standing is a judicial doctrine that focuses on whether the complaining party is the proper party to invoke the trial court's jurisdiction. *Id*. The standing requirement "is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury." *Id*. To establish standing, KLR must demonstrate a personal stake in the outcome of the lawsuit and must show that it has sustained, or was in the immediate danger of sustaining, some direct injury as a result of the conduct at issue. *Id.*

Turning to Emmanoelides' status as KLR's sole member, we are mindful that a member may act as an agent of the company under the auspices of an agency relationship. *See Quality Foods, Inc. v. Holloway Assocs Prof'l Eng'rs & Land Surveyors, Inc*., 852 N.E.2d 27, 32 (Ind. Ct. App. 2006). Nevertheless, the existence of a possible agency relationship alone is not sufficient for the company to incur standing, rather, it must still satisfy the general principles of a standing requirement: personal stake and injury. KLR failed to comply with this burden.

The evidence designated by KLR indicates that Emmanoelides intended to pay Spicklemire's back taxes as a capital contribution to KLR on January 14, 2005. He also testified that because KLR, as a company, did not have any checks, he paid the taxes with his own personal check. In his deposition testimony, Emmanoelides affirmed that KLR did not maintain a ledger or operating agreement, nor had the company created any notes

10

in favor of its sole member demonstrating KLR's obligation to repay the amounts Emmanoelides had paid out of his personal funds. Pursuant to Ind. Code § 23-18-4-8(a)(5)(A), a limited liability company must keep at its principal office, "a writing setting out the amount of cash, if any, and a statement of the agreed value of other property or services contributed by each member and the times at which or events upon the happening."

Besides Emmanoelides' own statement that the payment of back taxes should be characterized as a capital contribution, there is no evidence establishing that KLR has a personal stake in the outcome of this litigation and has suffered a direct injury. Generally, "[T]ransparent contentions, mere pleading allegations, and self-serving unverified statements of facts cannot defeat a motion for summary judgment." *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 282 (Ind. 1983). Therefore, in the absence of some designated evidence that KLR sustained a demonstrable injury, we affirm the trial court's Order concluding that KLR does not have standing to pursue its claim.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded that KLR did not have standing to pursue its claim.

Affirmed.

MAY, J. concurs

VAIDIK, C.J. concurs in result with separate opinion

11

**IN THE**
**COURT OF APPEALS OF INDIANA**

| | | |
|---|---|---|
| 5200 KEYSTONE LIMITED REALTY, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff | ) | |
| | ) | |
| vs. | ) | No. 49A04-1306-CT-311 |
| | ) | |
| FILMCRAFT LABORATORIES, INC., ERIC J. | ) | |
| SPICKLEMIRE, PORTRAIT AMERICA, | ) | |
| INC., A.C. DEMAREE, INC., RUSS DELLEN, | ) | |
| INC., CLEAR CAR, INC., and THE WAX | ) | |
| MUSEUEM & AUTO SALES, INC. | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

**VAIDIK, Chief Judge, concurring in result.**

The majority concludes that 5200 Keystone Limited Realty, LLC ("KLR") lacks standing to pursue its property-tax claim against Eric J. Spicklemire. I respectfully concur in result because I believe that KLR is barred from bringing a claim against Spicklemire for the Site's tax liabilities.

12

Under Indiana law, a foreclosure followed by sheriff's sale terminates any claims between a mortgagee and a mortgagor relating to the mortgaged land:

> Sound equitable principles certainly require that a deed made upon a sale pursuant to a decree of foreclosure of a mortgage on land should be as valid as if executed by the mortgagor and mortgagee, and that it should constitute an entire bar against each of them, and against all parties to the proceedings therein, and against their heirs, respectively, and all persons claiming under such heirs.

*Dixon v. Eikenberry*, 161 Ind. 311, 67 N.E. 915, 917 (1903) (citations omitted); *see also Armstrong v. Keene*, 861 N.E.2d 1198, 1201 n.4 (Ind. Ct. App. 2007) (defining foreclosure as a legal proceeding that terminates a mortgagor's interest in property), *reh'g denied*, *trans. denied*; *Dipert v. Kllingbeck*, 124 Ind. App. 18, 112 N.E.2d 306, 309 (1953) (a suit resulting in foreclosure of a real-estate mortgage is an in rem action and all rights in the real estate are forever concluded by the foreclosure decree), *reh'g denied*.

In this case, Apex (the mortgagee) took title to the Site in 2002 after it obtained a foreclosure judgment against Spicklemire (the mortgagor) and received a sheriff's deed. Two years later, KLR took title to the Site via a quitclaim deed from Apex. Applying *Dixon*'s logic, when Apex received the sheriff's deed following foreclosure, it was barred from later pursuing a property-tax claim against Spicklemire. KLR, Apex's heir in ownership of the Site, is likewise barred from bringing a property-tax claim against Spicklemire. *Dixon*, 67 N.E. at 917.

Because I believe KLR is barred from pursuing its property-tax claim against Spicklemire, I respectfully concur in result.